on behalf of Andrew Gomez. I would like to reserve two minutes, please. Because the police have tremendous power to seize people on the side of the road for a minor traffic violation. Rodriguez established a bright line rule to to protect the right of people to be secure in their person and their legitimate privacy interests will on the road. If an officer does not get bonus time to pursue unrelated investigations, if he performs the traffic stop expeditiously, then he certainly doesn't get bonus time when he slow walks tasks that are typically associated with a traffic stop here. 45 seconds after making contact, the officer decided to resolve the traffic violation with a simple warning. But instead of collecting the registration, which is the district court explained only a rookie cop would fail to do, he waited almost three minutes before asking for the registration from the time he made contact and over two minutes from when he decided to resolve the case with just a warning. Instead of requesting the paperwork, he spent time separating the driver and the passenger so that he could engage in questions that were unrelated to the mission of the minor traffic stop that he had already decided to resolve with the warning. And based on his own timeline, before he even got around to completing the limited information on the warning, he engaged in a series of invasive and personal questions such as where Gomez was heading and if he was related to his passenger in the car. And at that moment, the officer extended the seizure beyond the limited mission of the traffic stop that he had already decided to resolve with a warning. And that extended seizure was unlawful because at that moment, the officer did not have specific, articulable facts to believe that Gomez was engaged or about to be engaged in trafficking drugs. According to the officer's report. Ms. Sesto, I have a question. At what point do you contend that the officer departed from the mission of the traffic stop? There are, I would contend that there are at least three places that the officer unnecessarily extended the time. The first being when he engaged in questioning Mr. Gomez, asking him where he was going and if he was related to his passenger before, according to the officer, he even began completing the warning ticket. So I would contend that those questions, particularly under the facts of this case, where the officer had already decided to resolve the issue with just a warning, were unrelated to the purpose of the traffic stop and involves an unrelated investigation into more general criminal wrongdoing. So that would be the first place. Do you think the officer had reasonable suspicion to prolong this stop at that point? No, your honor. Based on his own report, all he had at that point was the smell of some air fresheners and some fast food wrappers in the car. And those two facts combined do not create a reasonable suspicion that Gomez was engaged in drug trafficking. So I would contend that that would be the first moment that there's at least two others. And so the second one would be when the until over two minutes after he'd already decided to resolve the traffic stop with just a warning. The case law, whether we look at Rodriguez, Chavez, Valenzuela, and they're all consistent with what the district court said, which is the officers would ask for the registration at the get go. But by delaying the asking of the red for the registration, the officer then is Ponce to find the registration. The officer should not get to bank that time by his strategic decision to not ask for the registration at the outset, which is the district court said. Only a rookie cop would fail to do so. That would be the second place. So the 34 seconds he spent talking to Ponce while Ponce was getting the registration, I would say was extending this traffic stop beyond the expeditious execution of the traffic stop. And that, let alone the 55 seconds he spent talking to Ponce after the 18 seconds he spent investigating the actual registration. So there is a significant period of time there where the traffic stop was extended beyond expeditious fulfillment of the mission of the traffic stop. And I would also contend that under the facts of this case, the call to dispatch was not about resolving the mission of the traffic stop, but was merely used to artificially extend the traffic stop. Because in this particular case, not only had the officer decided to resolve the traffic violation with just the warning, he did not wait for dispatch to get back to him before wrapping up the traffic stop. He handed Gomez- Council, if I could interject. You look to me like Judge Kain. I had a question, but your mic's on mute, I think. Judge Kain, I think you're on mute. Phone. Can you hear me now? I'm sorry. I do apologize. Council? Yes, Your Honor. Under the Ornalis decision of the Ornalis versus the United States, due weight has to be given to the officer and the inferences in which he bases his reasonable suspicion. Here he had a heavy scent of an air freshener, inconsistent stories. Do you not agree that some weight has to be, deference has to be given to the officer when he comes upon these items in totality? I absolutely believe deference to the officer, but this circuit's very clear. We look at what the officer knew at the time the seizure occurred. Putting aside the issue of whether these stories were inconsistent, he didn't have that at the time that the first two extensions occurred, which has to do with when he started asking him, Gomez, the passenger, the driver, the unrelated questions, which I contend was the first extended seizure. There was no issue with inconsistent stories. And the additional time with respect to Ponce getting the registration, my argument is if he had properly asked for that registration in an expeditious manner, he would not have been able to bank that time with Ponce. So that conversation also would not have occurred. So if we look at what the officer actually knew, according to his own report, that gave any indication of suspicion of drug trafficking, it was simply the air freshener and the fast food wrappers. So he doesn't get to then delay the stop to go on a fishing expedition to get more reasonable cause, which is what happened here. Counselor? Yes. Judge Gould, if I could interject. Do you have any case that indicates that the short periods of time that you're talking about involving questions for a number of seconds are sufficiently long that they can be considered an extension of the traffic? Your Honor, here we have far more than just a couple of seconds, but I would say Rodriguez and Evans and Landeros, we look at whether any time was added, and we don't look at specifically where in the chronology. The critical question of this court said both in Evans and Landeros, as well as Rodriguez, any time that exceeds what is needed for an expeditious resolution of a traffic stop. Does that mean if an officer asks some general question that extends the time for, say, 18 seconds, that that means there's a violation of the Fourth Amendment? Your Honor, I think potentially, technically, that would be the reading of Evans and Landeros, but we don't need to get there here because we have a good five, if not more, minutes where this traffic stop was extended. We have the unrelated questioning. We have the delay of asking for registration, which then banked all of the time that he talked to the passenger, which was entirely unnecessary. And we have the call to dispatch where the officer here resolved the matter by handing back the warning ticket and the registration, the paperwork, the ID. All of that was two minutes before dispatch got back to the officer. And we have the officer's own report where he does not consider the information received from dispatch to be remotely relevant because it's not in his report at all. So I think under those facts, it's clear the call to dispatch was used to artificially extend the traffic stop and was not part of the resolution of the mission of the traffic stop. So there's far more than just a couple of questions here in a couple of seconds. I'd like to reserve my time. Thank you, Your Honor. Okay, thank you. Ms. Rabin? May it please the court, Vincenza Rabin for the United States. The defense is trying to artificially narrow the scope of questioning that can be justified by the traffic stop. The defense is relying on Rodriguez to talk about reasonable suspicion, but completely missing from this analysis is the fact that Rodriguez also says that ordinary inquiries incident to the traffic stop may be asked in investigation of the original mission of the traffic stop. Therefore, questions relating to first this the speeding of Gomez and then his lack of a suspicion analysis. Therefore, any question that can be justified by the traffic stop does not need to be justified by reasonable suspicion. And therefore, the government's position is that Gomez does not, sorry, Kenzie does not ask Gomez any questions that are outside of the mission of the traffic stop until after he has already developed reasonable suspicion, which is far further along in the stop than what the defense has taken the position on. The inquiries that Officer Kenzie made were reasonable, common-sense questions that would followed up on the information that Ponce and Gomez were providing. The questions were about their travel plans. The government has about travel plans have been upheld not because they necessarily contributed to reasonable suspicion, but because they were considered to be part of a traffic stop and specifically a traffic stop that was focused on something like speeding or lack of a license. And the government's position is that these cases support that the questioning all the way until deep into his conversation with the passenger. And at that point, the Officer Kenzie knew not just that the car smelled of air fresheners, but also that they had inconsistent travel plans, that they apparently had not communicated on how long they were visiting and they were making a 14-hour round trip possibly to just have a two- hour turnaround and come right go right back to Riverside. And because at the time Officer Kenzie needed reasonable suspicion to delay the stop, he had it. The stop was not unjustifiably delayed at that point. Council, what troubles me is that according to his own account, he had, the officer had decided to issue the written warning and had retrieved his citation book from his patrol car before he started asking any of these questions related to where they lived, where they were going, who was related to who, and then developing, questioning them separately, and then developing. I mean, I could see by the time he was finished with all these actions, yeah, there's reasonable suspicion from the conflicting stories. But before he even started questioning them, he, on these things that are really not directly related to the exact stop, he had finished his mission of warning them for speeding. Your Honor, the government's position is that he had not finished the mission. He had made a decision in his head that based on what he knew at that moment in time, a warning was probably the appropriate thing to do in this case. And so he went about gathering information he needed to complete the warning. And Rodriguez does not say that the mission of the traffic stop is achieved when the mission of the traffic stop is achieved when it is complete, when he has written the warning and given it to Gomez. Right, but Rodriguez also says that here's what's the ordinary inquiries incident to the traffic stopper, checking the driver's license, determining whether they're outstanding warrants, inspecting the automobile's He wasn't sticking to that. He was, I mean, he went way beyond that with the questioning. I mean, I do think once the conflicting stories came out, that was definitely reasonable suspicion for the rest. But I don't, I have trouble with considering the separate questioning of the individuals and these kind of tangential questions after he's already decided to give them the warning. Your Honor, the relevant analysis is whether or not the officer first delayed the stop. And if he did so, did he have reasonable suspicion? The government's is that none of the questions about that, that, that officer Kenzie asked in his first encounter with Gomez delayed the stop because they were relevant to reasonables to their travel plans and therefore reasonably related to the traffic stop. Therefore, all of those questions were permissible because officer Kenzie was diligently investigating the traffic stop at that time. And, and those questions are all permissible. The, the, you know, next frame when he goes in and he talks to Ponce at that point, he already knows that the, the, at least Gomez's version of the travel plans is a 14 hour round trip from between Riverside and somewhere outside of San Francisco. And the government's position is at that point, he certainly has reasonable suspicion if not for that. And, and the, in, in addition, the, the questions that officer Kenzie were, was asking were, were not outside of the mission of the traffic stop because they all can be justified as an investigation into the traffic stop. For example, where, where Gomez lives, the, the question, where are you headed has been upheld as reasonably relevant to a traffic stop in, in several cases that the government has cited. The, the, and the officer needs to know where they're headed because he is looking at an individual with no legal ability to Right, so why not arrest him for that? Or cite him for that? So why not cite him for that? Well, I mean, he wasn't, he didn't have a driver's license. Right, that he, he was asking questions to determine what the, what the appropriate course of action is here, where somebody has claims to have a to drive the car anywhere. And so all of those questions were related to exactly the facts that were presented to him during the traffic stop. The government's not aware of any case law that says that, that the officer has to immediately arrest someone as soon as they, or, or issue them a citation as soon as they become aware of, of a citable offense. That, that is not my understanding of the law. The, the officer was permitted to continue his investigation into the traffic stop to gauge the, the extent of what was going on with the traffic stop. Thank you all for your honors. If the, if there are no further questions, then the government requests that the court affirm the district court's holding and resubmit. No questions here. So Ms. Sesso, you have about a minute. Rodriguez did not set forth a list of tasks that an officer must accomplish. Just those that are typical in a traffic stop. Rodriguez stressed that what is important is looking at what the officer actually did. Here we have an officer who learned that Gomez had a, had a driver's permit and promptly, immediately, within 47 seconds, decided to resolve it with a warning citation. He was done investigating the mission of the traffic stop. If the type of gamesmanship that law enforcement engaged in here is permissible, that would mean law enforcement could pull just about anybody over on the side of the road and for a minor traffic violation, and then ask them unrelated personal questions, such as why is your mother not with you in the car on this trip to your That would, for 10 minutes at a time, if you could structure the stop as this officer did, that seems inconsistent with this court's observation that traffic stops generally last only a few minutes. It made in Gorman. It's irreconcilable with the fourth amendment's protection of the right of individuals to be secure from the government's arbitrary interference, and it would seem to obliterate the right the Supreme Court recognized in Illinois that people have a legitimate expectation to information about their perfectly lawful activities, that they remain private, such as why your mother's not driving with you to go to your grandmother's. This stop was unpermissively extended far beyond the mission of the traffic stop. The contraband seized was the fruits of the illegal search and should be suppressed. Thank you. Thank you, counsel. U.S. versus Gomez will be versus Hill.
judges: Wardlaw, Gould, Cain